UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC LUND, | No. 2:19-cv-02287-TLN-DMC |
| Plaintiff, | |
| v. | **ORDER** |
| JEFFREY DATZMAN, et al., | |
| Defendants. | |

This matter is before the Court on three separate Motions to Dismiss: (1) Defendants State of California, Samuel Dickson, Steve West, Kevin Knopf, John Blencowe, Warren Stanley, Joseph Farrow, Nick Norton, Helena Williams, Kevin Domby, David Varao, and Ryan Duplissey's (collectively, "State Defendants") Motion to Dismiss (ECF No. 114); (2) Defendants City of Vacaville, Jeffrey Datzman, Steven Carey, Mark Ferreira, and Chris Lechuga's (collectively, "City Defendants") Motion to Dismiss (ECF No. 117); and (3) Defendants County of Solano, Krishna Abrams, and Ilana Shapiro's (collectively, "County Defendants") Motion to Dismiss (ECF No. 118).  Each motion has been fully briefed.

For the reasons set forth below, the Court GRANTS in part and DENIES in part State Defendants' motion, GRANTS in part and DENIES in part City Defendants' motion, and DENIES County Defendants' motion.

///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Until 2014, Plaintiff Eric Lund ("Plaintiff") worked as a sworn law enforcement employee for the California Highway Patrol ("CHP"). (ECF No. 109 at 5.) On October 16, 2014, officers from the Vacaville Police Department ("VPD") arrested Plaintiff for possession of child pornography. (*Id.*) Plaintiff was convicted of that charge on October 30, 2018, and was sentenced to five years in prison. (*Id.*) Plaintiff fully served his sentence and is no longer in custody. (*Id.*) City Defendants Datzman, Carey, Ferreira, and Lechuga were VPD officers who performed various searches and seizures leading to Plaintiff's arrest. (*Id.* at 2–3.) State Defendants Dickson, West, Knopf, Blencowe, Stanley, Farrow, Norton, Williams, Domby, Varao, and Duplissey were CHP officers who were involved in various aspects of the investigation and subsequent termination of Plaintiff from CHP employment. (*Id.*) County Defendants Abrams and Shapiro were district attorneys who were involved in Plaintiff's criminal prosecution. (*Id.*)

Plaintiff commenced the instant action on November 12, 2019. (ECF No. 1.) On July 1, 2020, the Court granted Defendants' motions to dismiss all but one of Plaintiff's 73 claims in the Second Amended Complaint ("SAC"). (ECF No. 73.) Plaintiff voluntarily dismissed the remaining claim and appealed. (ECF No. 85.) The Ninth Circuit affirmed in part and vacated and remanded in part. (ECF No. 93.) The Court will address relevant portions of the Ninth Circuit's mandate in more detail below in conjunction with the parties' arguments.

Plaintiff filed the operative Third Amended Complaint ("TAC") on November 7, 2022, alleging 22 claims related to Plaintiff's arrest and conviction. (ECF No. 109.) In the TAC, Plaintiff organizes his claims according to separate "fact sets." The Court will briefly summarize the claims associated with each fact set in turn:

1. Claim One (a California Civil Code § 52.1 ("§ 52.1") claim based on an alleged violation of Article I, § 13 of the California constitution) and Claim Two (a 42 U.S.C. § 1983 ("§ 1983") claim for an alleged violation of the Fourth Amendment) relate to a search that took place in the CHP Office where Plaintiff worked on October 16, 2014;

2

2.  Claim Three (breach of duty under California Penal Code § 832.7) and Claim Four (common law breach of confidence in violation of California Government Code §§ 815.2 and 820) relate to disclosures that West, Plaintiff's supervisor, made to Datzman, a VPD detective, on October 6, 2014, about private details such as Plaintiff's personal information and work schedule;

3.  Claim Five (breach of duty under California Penal Code § 1535), Claim Six (a § 52.1 claim based on an alleged violation of Article I, § 7 of the California constitution), and Claim Seven (a § 1983 claim for an alleged violation of the Fourteenth Amendment) relate to VPD Lieutenant Ferreira's failure to give Plaintiff a receipt for property seized during the search on October 16, 2014;

4.  Claim Eight (breach of duty under California Government Code §§ 820 and 3309), Claim Nine (breach of duty under California Penal Code § 1535), and Claim Ten (a § 1983 claim for an alleged violation of the Fourteenth Amendment) relate to a search of Plaintiff's work locker that took place on October 16, 2014;

5.  Claim Eleven (a § 52.1 claim based on an alleged violation of Article I, §§ 1 and 13 of the California constitution), Claim Twelve (a § 1983 claim based on an alleged violation of the Fourth Amendment), and Claim Thirteen (common law trespass) relate to the presence of unnecessary parties during the execution of a search warrant inside Plaintiff's home on October 27, 2014;

6.  Claim Fourteen (a § 52.1 claim based on an alleged violation of Article I, § 13 of the California constitution) and Claim Fifteen (a § 1983 claim based on an alleged violation of the Fourth Amendment) relate to a second search of Plaintiff's work locker that took place on October 23, 2014;

7.  Claim Sixteen (a § 52.1 claim based on an alleged violation of Article I, §§ 1 and 13 of the California constitution) relates to District Attorney Shapiro's search of Plaintiff's cell phone text history, which included private marital communications;

8.  Claim Seventeen (common law defamation), Claim Eighteen (a § 52.1 claim based on an alleged violation of Article I § 17 of the California constitution), and Claim

3

1     Nineteen (claim for injunctive relief) relate to a Facebook post about Plaintiff's

2     conviction published by the Solano County District Attorney's Office on May 1,

3     2019; and

4    9. Claim Twenty (a § 1983 claim based on alleged violations of the Fifth, Sixth, and

5     Fourteenth Amendments), Claim Twenty-one (a § 52.1 claim based on an alleged

6     violation of Article I, §§ 7, 14, and 15 of the California constitution), and Claim

7     Twenty-two (breach of duty under California Government Code §§ 3304 and 820)

8     relate to Plaintiff's termination from his CHP employment.

9    Defendants filed the three pending motions to dismiss on September 7, 2023.  (ECF Nos.

10 114, 117, 118.)  The case was reassigned to the undersigned on December 11, 2023.  (ECF No.

11 129.)  The Court will address each motion in turn.

12    **II.**  S\ᴛᴀɴᴅᴀʀᴅ ᴏꜰ Lᴀᴡ

13    A motion to dismiss for failure to state a claim upon which relief can be granted under

14 Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

15 *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

16 "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

17 Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in

18 federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

19 grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

20 citation and quotations omitted).  "This simplified notice pleading standard relies on liberal

21 discovery rules and summary judgment motions to define disputed facts and issues and to dispose

22 of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

23    On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

24 *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

25 reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

26 *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

27 "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

28 relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Thus, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss" for failure to state a claim.  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (citations omitted).  Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680 (internal quotations omitted).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in

1  denying leave to amend when amendment would be futile).  Although a district court should

2  freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to

3  deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint."

4  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting

5  *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

6  **III.   ANALYSIS**

7  Each of the three pending motions to dismiss contain distinct arguments.  However, State

8  Defendants and City Defendants both move to dismiss Claim Four.  (ECF No. 114 at 18; ECF

9  No. 117 at 15.)  In opposition, Plaintiff agrees to dismiss Claim Four.  (ECF No. 120 at 17; ECF

10  No. 123 at 15.)  Therefore, the Court DISMISSES Claim Four without leave to amend.  The

11  Court will address the remaining arguments from each motion to dismiss separately.

12  **A.   State Defendant's Motion to Dismiss**

13  In their motion, State Defendants argue: (1) Plaintiff's claims are barred by the

14  *Heck*/*Yount* doctrines; (2) Plaintiff's claims are barred by the *Rooker-Feldman* doctrine; (3)

15  Plaintiff's state-law claims are barred by issue and claim preclusion; (4) Plaintiff failed to timely

16  comply with the California Government Claims Acts; (5) Plaintiff's claims are barred by

17  California Government Code § 821.6; and (6) Plaintiff fails to state viable claims against the State

18  and Stanley.[1]  (ECF No. 114.)  The Court will address State Defendants' arguments in turn.

19  *i.   Heck/Yount Doctrine*

20  State Defendants argue the *Heck* doctrine bars § 1983 claims and the *Yount* doctrine bars

21  state-law claims that imply the invalidity of Plaintiff's conviction.  (ECF No. 114 at 16.)  In

22  opposition, Plaintiff argues the *Heck* defense is moot and notes that he also filed a habeas

23  petition, which is currently pending in this district.[2]  (ECF No. 120 at 8–9.)

24  _____

25  [1]      State Defendants repeatedly use footnotes throughout their motion to raise other cursory

26  arguments for the dismissal of certain claims.  (*See, e.g.*, ECF No. 114 at 13 nn. 4–6, 18 nn. 9–10.)  The Court declines to address underdeveloped arguments that are scattered in footnotes throughout State Defendants' motion.

27  [2]      Plaintiff's arguments on this issue lack clarity.  Plaintiff requests the Court stay the instant

28  action pending the resolution of the habeas action or consolidate the two actions.  (ECF No. 120

6

1    Under *Heck*, a § 1983 claim must be dismissed if "a judgment in favor of the plaintiff

2    would necessarily imply the invalidity of his conviction or sentence," unless the conviction or

3    sentence has already been invalidated.  *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).  *Yount*

4    applies the same rule to California state-law claims.  *Yount v. City of Sacramento*, 43 Cal. 4th

5    885, 902 (2008).  In the instant case, Plaintiff's conviction has not been invalidated.  Thus, *Heck*

6    and *Yount* bar claims that negate an element of the offense or rely on facts inconsistent with

7    Plaintiff's conviction.  *See Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996) ("[I]f a criminal

8    conviction arising out of the same facts stands and is fundamentally inconsistent with the

9    unlawful behavior for which [§] 1983 damages are sought, the . . . action must be dismissed.").

10    The procedural background of this case provides useful context for resolving the instant

11    motion.  In ruling on the prior motions to dismiss the SAC, the Court dismissed 69 of the 73

12    claims in the SAC based on *Heck* and *Yount*.  (ECF No. 73.)  On appeal, the Ninth Circuit vacated

13    those dismissals and remanded to this Court.  (ECF No. 93 at 2.)  The Ninth Circuit concluded

14    that Defendants failed to demonstrate the applicability of *Heck* or *Yount* to each claim because

15    "[r]ather than addressing the claims individually, [Defendants] largely took a shotgun approach,

16    seeking a general dismissal by arguing the SAC's allegations as a whole are intertwined with the

17    investigation, arrest, prosecution, and conviction of [Plaintiff]."  (*Id.*)

18    In the instant motion to dismiss, State Defendants again "largely took a shotgun

19    approach."  (ECF No. 93 at 2.)  State Defendants argue 15 of the 22 claims in the TAC are subject

20    to dismissal under *Heck* or *Yount*.  (ECF No. 114 at 18.)  However, rather than addressing the

21    claims individually, State Defendants only make three broad arguments: (1) Plaintiff's allegations

22    that West made unlawful disclosures during the investigation that resulted in Plaintiff's arrest are

23    "inextricably linked" to the legality of the search that led to his conviction; (2) Plaintiff's

24    allegations that State Defendants unlawfully searched for and seized evidence used to prosecute

25    Plaintiff improperly challenge the legality of search and seizure of evidence used to convict him;

26
_____

27    at 9.)  The Court DENIES this request.  The Court has not related the two actions, and Plaintiff

      fails to persuade the Court that staying the instant action or consolidating the two actions would

28    be in the interest of judicial economy.  To the extent Plaintiff wishes the Court to stay this action

      in the future, he should present those arguments in a properly noticed motion.

1    and (3) Plaintiff's allegations regarding the internal affairs investigation of his conduct and his

2    subsequent employment termination are *Heck*-barred because they rely on a theory that he did not

3    possess child pornography.  (ECF No. 114 at 17.)  State Defendants fail to delineate which of

4    these arguments apply to which claims or provide meaningful analysis for the Court to determine

5    which claims, if any, are fundamentally inconsistent with Plaintiff's conviction.

6         The Court also notes that the Ninth Circuit provided guidance on remand.  First, the Ninth

7    Circuit stated that claims that "attack the probable cause basis for the search warrant that

8    uncovered the child pornography for which [Plaintiff] was convicted" were subject to dismissal.

9    (ECF No. 93 at 3.)  While the TAC attacks various searches, State Defendants fail to explain

10   which claims involve searches that produced evidence used to convict Plaintiff.  Second, the

11   Ninth Circuit stated that "*Heck* does not automatically bar a claim simply because the claim

12   related to events that pre-date Plaintiff's conviction."  (ECF No. 93 at 3.)  As an example, the

13   Ninth Circuit explained that a Fourth Amendment claim in the SAC regarding the presence of

14   third parties during the execution of a search warrant at Plaintiff's home did not "on its face,

15   impugn the probable cause for the search or otherwise rely on facts inconsistent with his

16   conviction."  (*Id.* at 4.)  Despite the Ninth Circuit's guidance, State Defendants again move to

17   dismiss an identical claim in the TAC without addressing how such a claim violates *Heck*.  (ECF

18   No. 109 at 17.)

19        For the foregoing reasons, the Court concludes State Defendants have not met their

20   burden to demonstrate *Heck* or *Yount* bar each claim.  *See Washington v. L.A. Cnty. Sheriff's*

21   *Dep't*, 833 F.3d 1048, 1056 n.5 (9th Cir. 2016).  Accordingly, the Court DENIES State

22   Defendants' motion to dismiss based on *Heck* and *Yount*.

23                    *ii.   Rooker-Feldman Doctrine*

24        State Defendants argue the Court lacks jurisdiction over Claims Two, Ten, Twelve,

25   Fifteen, and Twenty pursuant to the *Rooker-Feldman* doctrine, which bars Plaintiff from

26   relitigating claims that were conclusively litigated in state court.  (ECF No. 114 at 18.)  In

27   opposition, Plaintiff argues the *Rooker-Feldman* doctrine does not apply because his claims relate

28   to the conduct of adverse parties, not a state-court decision.  (ECF No. 120 at 9.)

"The *Rooker-Feldman* doctrine forbids a losing party in state court from filing suit in federal district court complaining of an injury caused by a state court judgment, and seeking federal court review and rejection of that judgment." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013). The doctrine only applies if an "action contains a forbidden de facto appeal of a state court decision." *Id.* A de facto appeal exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003)). In contrast, if "a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction." *Id.* (quoting *Noel*, 341 F.3d at 1164). "Thus, even if a plaintiff seeks relief from a state court judgment, such a suit is a forbidden de facto appeal only if the plaintiff *also* alleges a legal error by the state court." *Id.* (emphasis in original).

State Defendants fail to persuade the Court that Plaintiff's claims are a de facto appeal of a state court judgment. State Defendants' motion is devoid of meaningful analysis on this issue, and State Defendants do not respond to Plaintiff's arguments in their reply. (*See generally* ECF No. 125.) Based on the arguments before the Court, it appears Plaintiff is neither seeking relief from a state-court judgment nor alleging a legal error by the state court. *Bell*, 709 F.3d at 897. Rather, Plaintiff alleges wrongful conduct by adverse parties. *Id.*

Therefore, the Court DENIES State Defendants' motion to dismiss based on the *Rooker-Feldman* doctrine.

### iii. Issue and Claim Preclusion

State Defendants argue Plaintiff's state-law claims are barred by the doctrines of issue and claim preclusion. (ECF No. 114 at 18.) Specifically, State Defendants argue these preclusion doctrines bar claims that challenge the legality of evidence that resulted in Plaintiff's conviction because he raised or could have raised those issues in his criminal trial. (*Id.*) In opposition, Plaintiff contends State Defendants' argument fails at the outset because they failed to analyze the elements of claim or issue preclusion. (ECF No. 120 at 12.) Plaintiff also contends that even if the Court reaches the merits of the preclusion arguments, Plaintiff did not have a fair opportunity to litigate the issues asserted in the TAC before his conviction. (*Id.*)

1    Issue and claim preclusion are distinct doctrines.  Issue preclusion prevents "a party to

2    prior litigation from re-disputing issues therein decided against him."  *Torres v. Carescope, LLC*,

3    No. 15-cv-0198-TLN-CKD, 2020 WL 6939032, at *6 (E.D. Cal. Nov. 25, 2020) (quoting *Smith v.*

4    *ExxonMobil Oil Corp.*, 153 Cal. App. 4th 1407, 1414 (2007)).  Issue preclusion applies "(1) after

5    final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first

6    suit and (4) asserted against one who was a party in the first suit or one in privity with that party."

7    *Id.* (quoting *DKN Holdings LLC*, 61 Cal. 4th 813, 825 (2015)).  In contrast, claim preclusion

8    "prevents relitigation of the same cause of action in a second suit between the same parties or

9    parties in privity with them."  *Mycogen Corp. v. Monsanto*, 28 Cal. 4th 888, 896 (2002).  Claim

10   preclusion "arises if a second suit involves (1) the same cause of action (2) between the same

11   parties (3) after a final judgment on the merits in the first suit."  *DKN*, 61 Cal. 4th at 824.

12   The Court concludes State Defendants have not established issue or claim preclusion bars

13   any of Plaintiff's claims.  As with their arguments under *Heck* and *Yount*, State Defendants make

14   shotgun arguments and fail to address how issue and/or claim preclusion applies on a claim-by-

15   claim basis.  Indeed, State Defendants fail to address the distinct elements of claim or issue

16   preclusion.  Instead, they seem to conflate the two doctrines, arguing in a conclusory fashion that

17   both preclusion doctrines bar claims challenging the legality of searches that led to Plaintiff's

18   arrest and conviction because Plaintiff "raised those issues in his criminal trial and lost before the

19   trial court and appellate court."  (ECF No. 114 at 19.)  The Court also notes State Defendants fail

20   to cite any case where a court granted a Rule 12(b)(6) motion under similar circumstances.  For

21   example, State Defendants rely on *Haupt v. Dillard*, 17 F.3d 285 (9th Cir. 1994), a case that is

22   factually distinct and was decided on a motion for summary judgment.  (ECF No. 114 at 19.)

23   For all these reasons, State Defendants fail to persuade the Court that either preclusion

24   doctrine applies.  Accordingly, the Court DENIES State Defendants' motion to dismiss based on

25   the preclusion doctrines.

26   *iv.   Timeliness under the Government Claims Act*

27   State Defendants next move to dismiss Plaintiff's state-law claims as time-barred under

28   the California Government Claims Act (the "Act").  (ECF No. 114 at 21.)  Prior to bringing tort

10

1    claims against state and local public entities, plaintiffs in California must comply with the strict

2    procedural requirements of the Act.  Cal. Gov't Code §§ 810–996.6.  Among the Act's procedural

3    prerequisites for commencing a suit is the requirement that a claimant file a written claim with the

4    proper public entity.  *See id.* § 945.4.  "[T]he purpose of the [Act] is to provide the public entity

5    sufficient information to enable it to adequately investigate claims and to settle them, if

6    appropriate, without the expense of litigation."  *Roger v. Cnty. of Riverside*, 44 Cal. App. 5th 510,

7    523 (2020) (citing *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 705 (1989)).

8           "To achieve this purpose, section 911.2 requires a claimant to present a claim to the public

9    entity within a specified time after accrual of the cause of action."  *Id.*  "A claim relating to a

10    cause of action for death or for injury to person . . . shall be presented . . . not later than six

11    months after the accrual of the cause of action."  Cal. Gov't Code § 911.2(a).  If a claim is not

12    presented within the six-month time frame, the claimant may submit a written application for

13    leave to present the claim "within a reasonable time not to exceed one year after the accrual of the

14    cause of action."  *Id.* § 911.4(b).  Section 911.3 provides that when a claim is untimely, the entity

15    must "at any time within 45 days after the claim is presented, give written notice to the person

16    presenting the claim that the claim was not filed timely and that it is being returned without

17    further action."  *Id.* § 911.3(a).  An entity's failure to notify the claimant results in waiver of any

18    defense that the claim was untimely.  *Id.* § 911.3(b).  The waiver rule "encourages public entities

19    to investigate claims promptly, and to make and notify claimants of their determinations, thus

20    enabling the claimants to perfect their claims."  *Phillips*, 49 Cal. 3d at 706.

21           State Defendants argue Plaintiff's government claims were untimely because he resigned

22    from state service on December 11, 2014, and he did not file the claims until April 2019.  (ECF

23    No. 114 at 21.)  In opposition, Plaintiff argues State Defendants waived any objection to the

24    timeliness of the state-law claims under the Act by failing to notify Plaintiff that the claims were

25    untimely within 45 days of receiving the claims.  (ECF No. 120 at 13.)  In reply, State Defendants

26    do not dispute that they failed to notify Plaintiff about the untimeliness of his claims.  (ECF No.

27    125 at 5.)  Instead, State Defendants argue Plaintiff is estopped from asserting waiver because he

28    misrepresented the accrual date of his claims on his claim form and State Defendants thus "had

11

1  no way of determining that the claims were, in fact, untimely." (*Id.* (citing *Estill v. Cnty. of*

2  *Shasta*, 25 Cal. App. 5th 702 (2018)).)

3        In *Estill*, the case State Defendants cite to support their argument, a California appellate

4  court found a claimant was estopped from asserting waiver because she had mispresented the

5  accrual date on her government claim form and the County had "no initial reason to question

6  when she first became aware of the alleged incident." *Id.* at 710. Unlike *Estill*, the facts alleged

7  in Plaintiff's claim form should have alerted State Defendants to the possibility that Plaintiff's

8  claims were untimely. For example, Plaintiff's claim form discusses at length the allegedly

9  unconstitutional actions that led to his arrest in 2014, such as the execution of the search warrant

10  on October 16, 2014. (ECF No. 65 at 30.) State Defendants fail to persuade the Court that

11  Plaintiff's purported misrepresentation about the accrual date of his claims allowed them to avoid

12  their obligation to notify him of timing deficiencies in his claim considering that "even a cursory

13  claim review" should have identified that the claims accrued much earlier. *See Roger*, 44 Cal.

14  App. 5th at 525–26 ("While a public entity is not required to investigate a claim for timeliness, it

15  fails to do so at the risk of waiving a timeliness defense in litigation.").

16        Thus, the Court DENIES State Defendants' motion to dismiss as to the timeliness of the

17  state-law claims.

18                    *v.  California Government Code § 821.6 ("§ 821.6")*

19        State Defendants argue Plaintiff's claims related to initiating employment termination

20  proceedings against him are barred under § 821.6. (ECF No. 114 at 22.) In opposition, Plaintiff

21  argues § 821.6 does not apply to the claims at issue. (ECF No. 120 at 15.)

22        Section 821.6 states, "A public employee is not liable for injury caused by his instituting

23  or prosecuting any judicial or administrative proceeding within the scope of his employment,

24  even if he acts maliciously and without probable cause." The California Supreme Court recently

25  clarified that § 821.6 "immunizes public employees from claims of injury caused by wrongful

26  prosecution" but does not "confer[ ] immunity from claims based on other injuries inflicted in the

27  course of law enforcement investigations." *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910, 915

28  (2023). The *Leon* court further explained that § 821.6 immunity "is narrow in the sense that it

                                                    12

1  applies only if the conduct that allegedly caused the plaintiff's injuries was the institution or

2  prosecution of an official proceeding" but is "broad in the sense that it applies to every such tort

3  claim, whether formally labeled as a claim for malicious prosecution or not." *Id.* at 922.

4        As with their previous arguments, State Defendants fail to develop their argument about §

5  821.6 on a claim-by-claim basis.  Instead, State Defendants summarily argue Claims Thirteen,

6  Fourteen, Twenty-one, and Twenty-two should be dismissed under § 821.6 because those claims

7  relate to the institution of Plaintiff's employment termination proceedings.  (ECF No. 114 at 22.)

8  Claim Thirteen alleges common law trespass related to a search at Plaintiff's home on October

9  27, 2014.  (ECF No. 109 at 15–18.)  Claim Fourteen alleges a Bane Act claim for an

10  unconstitutional search of Plaintiff's locker on October 23, 2014.  (*Id.* at 18–19.)  It is unclear to

11  the Court how either of those claims involve an injury stemming "from the initiation or

12  prosecution of proceedings." *Leon*, 14 Cal. 5th at 924.  Claims Twenty-one and Twenty-two are

13  a closer call.  Both claims allege State Defendants harmed Plaintiff by requiring him to attend an

14  administrative interrogation without counsel, which ultimately resulted in his termination from

15  employment.  (ECF No. 109 at 24–30.)  However, State Defendants fail to provide sufficient

16  argument or authority to persuade the Court that § 821.6 bars those claims as a matter of law.

17        Accordingly, the Court DENIES State Defendants' motion to dismiss under § 821.6.

18        *vi.   Failure to State a Claim Against the State or Stanley*

19        State Defendants argue the allegations against the State (Claims Sixteen, Seventeen, and

20  Eighteen) fail because allegations involving Plaintiff's prosecution and the announcement of his

21  conviction only relate to the County's conduct, not the State's.  (ECF No. 114 at 22–23.)  State

22  Defendants also argue the claims against Stanley should be dismissed because he is not alleged to

23  be a Defendant.  (*Id.* at 23.)

24        In opposition, Plaintiff argues that while a district attorney generally acts on behalf of the

25  State, "resolution of th[e] question first requires a factual finding to be made on whether the

26  conduct complained of in each cause of action challenges the preparation to prosecute crimes or

27  the training and development of policies for prosecutorial staff on one hand, or something else on

28  the other hand." (ECF No. 120 at 16.)  As to Stanley, Plaintiff argues Stanley was named several

1    times in the TAC, including in the caption and in the claims, but was not listed as a party in the

2    "parties" section of the TAC due to a minor error that can be cured by amendment.  (*Id.*)

3          First, as to the drafting errors related to Stanley, the Court concludes there are sufficient

4    allegations in the TAC to put Stanley on notice of the claims against him, as Stanley is named in

5    the caption of the TAC as well as within individual claims.  The Court also notes State

6    Defendants fail to address Plaintiff's arguments on this issue in their reply.  Therefore, the Court

7    DENIES State Defendants' motion to dismiss claims against Stanley.

8          Second, as to claims against the State, Plaintiff appears to concede his claims against the

9    State may not be viable.  Plaintiff's opposition is devoid of sufficient authority or meaningful

10   analysis on this issue.  Thus, the Court GRANTS State Defendants' motion to dismiss claims

11   against the State with leave to amend.

12         In sum, the Court GRANTS State Defendants' motion to dismiss claims against the State

13   with leave to amend and DENIES State Defendants' motion to dismiss in all other respects.[3]

14              B.    City Defendants' Motion to Dismiss

15         City Defendants move to dismiss Claims One, Two, Five, Six, and Seven for failure to

16   state a claim.  (ECF No. 117.)  City Defendants also move to dismiss Plaintiff's request for

17   injunctive relief.  (*Id.*)  The Court will address each claim in turn.

18              *i.  Claim One*

19         Claim One asserts a Bane Act claim against City Defendants for the unlawful search of his

20   workplace on October 16, 2014.  (ECF No. 109 at 7.)  The Bane Act authorizes a civil action

21   when an individual's federal or state rights have been interfered with by "threats, intimidation, or

22   coercion."  *See* Cal. Civ. Code § 52.1.  Plaintiff alleges City Defendants interfered with his right

23   to be free from unreasonable searches and seizures under Article I, § 13 of the California

24   constitution.  (ECF No. 109 at 7.)  Plaintiff alleges the illegal search of his workplace was

25   inherently coercive and intimidating, and that executing the search at Plaintiff's workplace was

26   _____

27   [3]      State Defendants also requested the Court take judicial notice of various documents
     related to the Plaintiff's criminal case.  (ECF No. 119.)  Plaintiff filed a partial opposition.  (ECF
     No. 121.)  Because the Court did not find it necessary to rely on any of the documents in ruling

28   on the instant motion, the Court DENIES State Defendants' request without prejudice.

1    especially coercive because it discouraged Plaintiff from verbally objecting to the search.  (*Id.*)

2          City Defendants argue the Court should dismiss Claim One because: (1) Plaintiff fails to

3    allege facts showing any violence or threats of violence against Plaintiff; (2) there are no facts

4    Carey was involved in the search; and (3) Article I, § 13 of the California constitution does not

5    confer a right to monetary relief.  (ECF No. 117 at 12.)  As will be discussed, none of City

6    Defendants' arguments are persuasive.

7          As to City Defendants' first argument, "California courts remain undecided on whether a

8    Bane Act claim requires a threat of violence or whether intimidation or coercion involving a

9    nonviolent consequence would suffice."  *Black Lives Matter-Stockton Chapter v. San Joaquin*

10   *Cnty. Sheriff's Off.*, 398 F. Supp. 3d 660, 680 (E.D. Cal. 2019).  Several courts have concluded

11   the Bane Act "does not require violence or threat of violence."  *Moreno v. Town of Los Gatos*,

12   267 Fed. App'x 665, 666 (9th Cir. 2008); *see Hearns v. Gonzales*, No. 1:14-cv-01177-DAD-MJS,

13   2016 WL 110437, at *1–2 (E.D. Cal. Jan. 11, 2016) ("[T]here is no requirement under California

14   law to allege an act of violence has occurred or was threatened in order to state a claim under §

15   52.1, but rather only that the exercise of rights protected either by federal law or California law

16   was 'interfered with' by 'threat, intimidation, or coercion.'"); *see also Venegas v. Cnty. of L.A.*,

17   32 Cal. 4th 820, 827–28 (2004) (permitting claims under § 52.1 based on allegedly unlawful

18   searches and seizures by several law enforcement officers, despite there being no allegations of

19   violence or threats of violence against the two plaintiffs).  Based on the limited arguments before

20   the Court, City Defendants fail to persuade the Court that violence or a threat of violence is

21   necessary to plead a Bane Act claim based on an unconstitutional search.

22         Second, City Defendants argue there are no factual allegations establishing that Carey was

23   present or involved with the search.  (ECF No. 117 at 12.)  The Court disagrees.  Plaintiff alleges

24   that Carey, along with three other officers, "executed a search warrant against Lund at the . . .

25   CHP Office."  (ECF No. 109 at 5.)  Admittedly, Plaintiff's allegations about Carey's involvement

26   are less detailed than Plaintiff's allegations about the other officers' involvement.  (*See, e.g.*, *id.*

27   ("Ferreira was assigned as the 'finder,' and during the search Ferreira seized evidence from

28   [Plaintiff's] desk . . . and from [Plaintiff's] personal vehicle. . .").)  However, City Defendants fail

15

1    to cite authority or persuade the Court that Plaintiff's allegation about Carey being part of the
2    group that executed the search warrant at the CHP Office is insufficient to support a reasonable
3    inference that he was both present and involved with the search.

4        Third, while City Defendants argue Article I, § 13 of the California constitution does not
5    itself confer a right to monetary relief, City Defendants ignore that Claim One is brought pursuant
6    to the Bane Act.  (ECF No. 109 at 7.)  The cases City Defendants cite do not involve Bane Act
7    claims based on Article I, § 13 violations.  (ECF No. 117 at 12.)  Other district courts in the Ninth
8    Circuit have allowed such claims to proceed, and the Court will do the same.  *See Johnson v.*
9    *Shasta Cnty.*, 83 F. Supp. 3d 918, 935 (E.D. Cal. 2015) (denying a motion to dismiss a Bane Act
10   claim that was based on a violation of Article I, § 13); *see also Est. of F.R. v. Cnty. of Yuba*, No.
11   223CV00846WBSCKD, 2023 WL 6130049, at *6 (E.D. Cal. Sept. 19, 2023) (recognizing the
12   Bane Act provides a remedy for constitutional violations, including violations of Article I § 13);
13   *Agro Dynamics, LLC v. United States*, 692 F. Supp. 3d 1003, 1020 (S.D. Cal. 2023) ("Although
14   [Article I, § 13], on its own, does not provide for monetary damages, nothing suggests that
15   Plaintiff may not use it as the underlying predicate to its Bane Act claim.").

16       For all these reasons, the Court DENIES City Defendants' motion to dismiss Claim One.

17                              *ii.   Claim Two*

18       Claim Two asserts a § 1983 claim for a Fourth Amendment violation based on the same
19   search at issue in Claim One.  (ECF No. 109 at 7.)  City Defendants argue the Court should
20   dismiss Claim Two because Plaintiff's allegations "show the search of CHP premises was
21   conducted pursuant to CHP's consent authorizing the search."  (ECF No. 117 at 13.)  City
22   Defendants also argue Plaintiff fails to allege facts showing Lechuga and Carey were involved
23   with the search.  (*Id.* at 14.)

24       The Fourth Amendment provides in relevant part that "[t]he right of the people to be
25   secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,
26   shall not be violated."  U.S. Const. amend. IV.  "The Fourth Amendment does not proscribe all
27   state-initiated searches and seizures; it merely proscribes those which are unreasonable."  *Florida*
28   *v. Jimeno*, 500 U.S. 248, 250 (1991); *Morgan v. United States*, 323 F.3d 776, 781 (9th Cir. 2003).

16

1    "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate,

2    are *per se* unreasonable under the Fourth Amendment — subject only to a few specifically

3    established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967)

4              As to City Defendants' argument about consent, Plaintiff alleges "CHP personnel did not

5    give informed and voluntary consent for VPD [officers] to execute a warrantless search inside the

6    [CHP Office]." (ECF No. 109 at 6.)  City Defendants acknowledge the TAC alleges there was no

7    consent, but argue other allegations support a reasonable inference that CHP officers consented to

8    the search because CHP had authority to consent and the search took place in the presence of

9    CHP officers. (ECF No. 117 at 13.)  City Defendants misunderstand the Rule 12(b)(6) standard.

10   In ruling on a Rule 12(b)(6) motion, the Court does not draw reasonable inferences in City

11   Defendants' favor.  To the contrary, the Court must take Plaintiff's allegations as true and draw

12   all reasonable inferences in *Plaintiff's* favor.  Considering that Plaintiff expressly alleges there

13   was no consent for the search, the Court declines to dismiss Claim Two on that basis.

14             As to City Defendants' argument about Lechuga and Carey's participation, the Court has

15   already found there are sufficient allegations that Carey participated in the search.  The TAC

16   contains even more detailed allegations about Lechuga's personal involvement.  Not only does

17   Plaintiff allege Lechuga, like Carey, was part of the group that executed the search, but Plaintiff

18   also alleges Lechuga detained Plaintiff during the search and possessed a physical copy of the

19   search warrant. (ECF No. 109 at 6.)  The Court concludes these allegations are sufficient at the

20   pleading stage to establish that Carey and Lechuga were integral participants in the search.  *See*

21   *Bernhard v. City of Tracy*, No. 2:20-CV-02353-KJM-KJN, 2021 WL 2439667, at *3 (E.D. Cal.

22   June 15, 2021) (finding allegations that defendants conducted a search without consent were

23   sufficient to survive a motion to dismiss, even though the allegations referred to the officers

24   collectively).

25             Therefore, the Court DENIES City Defendants' motion to dismiss Claim Two.

26                         *iii.   Claim Five*

27             Claim Five alleges a breach of duty under California Penal Code § 1535 ("§ 1535") for

28   Ferreira's failure to give Plaintiff a receipt for the property seized during the search of Plaintiff's

1   workplace on October 16, 2014.  (ECF No. 109 at 12.)  Specifically, Plaintiff alleges he received

2   no notice that his cell phone had been seized.  (*Id.*)  City Defendants argue there is no cognizable

3   claim under § 1535.  (ECF No. 117 at 16.)

4        Section 1535 states,

5            When [an] officer takes property under the warrant, he must give a
             receipt for the property taken (specifying it in detail) to the person

6            from whom it was taken by him, or in whose possession it was found;
             or, in the absence of any person, he must leave it in the place where

7            he found the property.

8        Plaintiff does not argue § 1535 creates a private right of action, nor is there any indication

9   in the statute itself or the statutory scheme that civil enforcement is available to Plaintiff.  *See*

10  *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("[A] private right of action under a criminal

11  statute has rarely been implied.").  Instead, Plaintiff vaguely argues Claim Five is viable because,

12  although it based on a violation of § 1535, it is brought against Ferreira pursuant to Government

13  Code § 820 and against the City pursuant to Government Code § 815.6.  (ECF No. 123 at 15.)

14  However, Plaintiff fails to meaningfully develop or cite authority to support his argument.

15  Indeed, Plaintiff does not cite — nor can the Court locate — any cases that have recognized a

16  cause of action that involved a violation of § 1535.  In the absence of clear authority from

17  California courts, the Court declines to recognize such a claim as a matter of first impression.

18       For the reasons set forth above, the Court has serious doubts about Plaintiff's ability to

19  plead a viable cause of action under § 1535.  However, based on the extremely liberal standard in

20  favor of granting leave to amend, the Court will give Plaintiff an opportunity to amend.  *See*

21  *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1010 (9th Cir. 2008) ("[L]eave

22  shall be freely given where justice so requires." (citation and internal quotations omitted)).

23       Accordingly, the Court GRANTS City Defendants' motion to dismiss Claim Five with

24  leave to amend.

25                    *iv.   Claim Six*

26       Claim Six alleges a Bane Act claim for the same conduct at issue in Claim Five.  (ECF

27  No. 109 at 12–13.)  Plaintiff alleges Ferreira's failure to provide a receipt interfered with his due

28  process rights in violation of Article I, § 7 of the California constitution.  (*Id.*)  Plaintiff alleges

18

1   Ferreira's failure to provide a receipt was "an inherently intimidating act by law enforcement that

2   demonstrated a reckless disregard" for Plaintiff's rights.  (*Id.*)

3         City Defendants argue the Court should dismiss Claim Six because Plaintiff fails to allege

4   facts showing any violence or threats of violence.  (ECF No. 117 at 16.)  City Defendants also

5   argue Plaintiff fails to allege Ferreira had a specific intent to violate Plaintiff's rights.  (*Id.* at 17.)

6   Lastly, City Defendants argue Article I, § 7 of the California constitution does not provide a

7   cognizable cause of action.  (*Id.*)

8         As to City Defendants' first argument, for the reasons already discussed in the context of

9   Claim One, City Defendants fail to persuade the Court that Plaintiff must allege violence or

10  threats of violence to state a Bane Act claim.

11        As to City Defendants' second argument, a Bane Act claim requires a showing of

12  "specific intent" to violate a person's rights, which can be proven by "reckless disregard" of those

13  rights.  *Reese v. Cnty. Of Sacramento*, 888 F.3d 1030, 1043, 1045 (9th Cir. 2018); *Nehad v.*

14  *Browder*, 929 F.3d 1125, 1142 n.15 (9th Cir. 2019).  In the TAC, Plaintiff alleges Ferreira's

15  failure to comply with his duty to provide Plaintiff with a receipt of items seized "demonstrated a

16  reckless disregard" for Plaintiff's rights.  (ECF No. 109 at 13.)  The Court finds this is sufficient

17  at the pleading stage.  *See Smith v. City of Marina*, No. 22-CV-07308-PCP, 2024 WL 34401, at

18  *8 (N.D. Cal. Jan. 3, 2024) ("At the motion to dismiss stage . . . allegations of conduct that

19  violates constitutional rights coupled with allegations that the conduct was done with reckless

20  disregard for a party's rights can be sufficient to establish specific intent.").

21        As to City Defendants' third argument, while City Defendants argue Article I, § 7 of the

22  California constitution does not itself confer a right to monetary relief, City Defendants ignore

23  that Claim Six is brought pursuant to the Bane Act.  (ECF No. 109 at 12.)  For the same reasons

24  discussed in reference to City Defendants' similar argument for dismissal of Claim One, City

25  Defendants fail to persuade the Court that Plaintiff cannot allege a Bane Act premised on a

26  violation of Article I, § 7 of the California constitution.  *See Roy v. Cnty. of L.A.*, 114 F. Supp. 3d

27  1030, 1041 n.10 (C.D. Cal. 2015) ("[W]hether the violation of a state constitutional right may

28  support a statutory claim under Civil Code [§] 52.1 . . . is a separate and distinct inquiry from

1  whether that same state constitutional right provides an independent basis for monetary relief.").

2  For these reasons, the Court DENIES City Defendants' motion to dismiss Claim Six.

3  *v.  Claim Seven*

4  Claim Seven asserts a § 1983 claim for a violation of Plaintiff's procedural due process

5  rights under the Fourteenth Amendment based on the same conduct at issue in Claims Five and

6  Six.  (ECF No. 109 at 13.)  City Defendants argue the Court should dismiss Claim Seven because:

7  (1) California Penal Code § 1535 does not create a fundamental substantive right to notice of

8  property seized in a search; and (2) Ferreria is entitled to qualified immunity.  (ECF No. 117 at

9  19.)  In opposition, Plaintiff argues Claim Seven is based, not on violation of § 1535, but on a

10  violation of the Fourteenth Amendment itself.  (ECF No. 123 at 17.)  Plaintiff contends the Due

11  Process Clause of the Fourteenth Amendment requires adequate notice to be given before seizing

12  private property and that right is clearly established.  (*Id.*)

13  City Defendants primarily rely on *James v. Rowlands*, 606 F.3d 646 (9th Cir. 2010).

14  (ECF No. 117 at 18–19.)  In *James*, a father brought a § 1983 action against social workers who

15  took his daughter into temporary custody without notifying him.  606 F.3d at 656.  The father

16  argued California Welfare and Institutions Code §§ 307.4 and 11400 required Child Protective

17  Services officials to notify him and the failure to comply with those statutes violated his right to

18  procedural due process.  *Id.*  The Ninth Circuit disagreed, holding those statutes did not create a

19  right protected by the Fourteenth Amendment that could be vindicated through a § 1983 action.

20  *Id.*  The Ninth Circuit explained,

21  [W]hen a state establishes procedures to protect a liberty interest that
    arises from the Constitution itself—like a parent's liberty interest
22  here—the state does not thereby create a new constitutional right to
    those procedures themselves, and non-compliance with those
23  procedures does not necessarily violate the Due Process Clause.
    Rather, the Due Process Clause itself determines what process is due
24  before the state may deprive someone of a protected liberty interest.

25  *Id.* at 657 (internal citations omitted).

26  Given Plaintiff's clarification that Claim Seven asserts a direct due process claim under

27  the Fourteenth Amendment and not a claim based on a violation of § 1535, *James* does not appear

28  to be relevant.  Moreover, as Plaintiff correctly points out, it appears to be clearly established that

20

"when law enforcement agents seize property pursuant to warrant, due process requires them to take reasonable steps to give notice that the property has been taken so the owner can pursue available remedies for its return." *City of W. Covina v. Perkins*, 525 U.S. 234, 240 (1999); *see also Wright v. Beck*, 981 F.3d 719, 729 (9th Cir. 2020) ("[E]ven in cases after the government has lawfully seized property, reasonable notice must be provided prior to a final deprivation.").

Therefore, the Court DENIES City Defendants' motion to dismiss Claim Seven.

### vi.   Request for Equitable Relief

City Defendants argue Plaintiff's prayer for equitable relief should be dismissed because it is unclear what equitable relief Plaintiff seeks and there is no basis for equitable relief.  (ECF No. 117 at 20.)  In opposition, Plaintiff clarifies that the Bane Act allows him to obtain equitable relief for his Bane Act claims and argues City Defendants' challenge to injunctive relief is premature. (ECF No. 123 at 20.)  In reply, City Defendants argue that because Plaintiff's Bane Act claims are not viable, the Court should dismiss the request for equitable relief.  (ECF No. 124 at 10.)

The Court has found Plaintiff's Bane Act claims are sufficient to survive City Defendants' motion to dismiss, and City Defendants do not respond to Plaintiff's argument that the Bane Act provides standing for Plaintiff to seek equitable relief.  In addition, City Defendants do not respond to Plaintiff's arguments about City Defendants' argument being premature.  Based on the extremely limited briefing on this issue, the Court DENIES City Defendants' request to dismiss Plaintiff's request for equitable relief at this early stage.  *See Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007) ("[A] complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law.").

In sum, the Court GRANTS City Defendants' motion to dismiss Claim Five with leave to amend and DENIES City Defendants' motion to dismiss in all other respects.

### C.   County Defendants' Motion to Dismiss

In moving to dismiss, County Defendants argue: (1) § 821.6 shields them from liability for conduct that occurred in connection with Plaintiff's criminal prosecution; (2) California Civil Code § 47 bars Plaintiff's claims related to County Defendants' Facebook post regarding

Plaintiff's conviction; (3) claim and issue preclusion bar claims regarding the search of Plaintiff's cell phone; (4) Plaintiff's claims regarding the search of his cell phone are impermissible de facto appeals of a state court judgment; (5) Plaintiff fails to establish a Bane Act claim; and (6) Plaintiff is not entitled to injunctive relief.  (ECF No. 118-1.)  The Court will address County Defendants' arguments in turn.

*i.  Immunity Pursuant to § 821.6*

County Defendants argue they are protected by § 821.6 immunity because Plaintiff's claims against them are related to the institution or prosecution of an official proceeding.  (ECF No. 118-1 at 9.)  County Defendants also argue § 821.6 immunity applies even though the conduct at issue may have occurred after the criminal prosecution terminated.  (*Id.*)

County Defendants' argument about § 821.6 suffers from the same deficiencies as State Defendants' argument about § 821.6 and fails for the same reasons.  Namely, County Defendants fail to sufficiently address § 821.6 immunity on a claim-by-claim basis.  Instead, County Defendants vaguely argue "both the search of Plaintiff's text messages, the basis of the Sixteenth Cause of Action, and the publication of the Facebook post, the basis of the Seventeenth, Eighteenth, and Nineteenth Causes of Action, are based on activities that were directly connected to the prosecution of Plaintiff."  (ECF No. 118-1 at 9.)  In the absence of meaningful analysis of the facts or case law for each claim, it is unclear to the Court how any of those claims involve injury stemming "from the initiation or prosecution of proceedings."[4]  *Leon*, 14 Cal. 5th at 924.  As such, the Court cannot say that § 821.6 bars Plaintiff's claims against County Defendants as a matter of law.

Accordingly, the Court DENIES County Defendants' motion to dismiss based on § 821.6.

*ii.  Immunity Pursuant to California Civil Code § 47*

County Defendants argue California Civil Code § 47(b) ("§ 47(b)") bars Plaintiff's defamation claim (Claim Seventeen) because that claim stems from Plaintiff's criminal

---

[4]     While County Defendants make somewhat more specific arguments about each claim in their reply, the Court "need not consider arguments raised for the first time in a reply brief," *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), and declines to do so here.

proceedings.  (ECF No. 118-1 at 10–11.)  Section 47(b) provides that a "publication or broadcast" made as part of a "judicial proceeding" is privileged.  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."  *Silberg v. Anderson*, 50 Cal. 3d 205, 212 (1990), *as modified* (Mar. 12, 1990).  "The principal purpose of [the litigation privilege] is to afford litigants and witnesses . . . the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions."  *Id.* at 213.

County Defendants again fail to provide sufficient analysis to support their argument.[5]  For example, as Plaintiff correctly points out, County Defendants fail to establish that the Facebook post about Plaintiff's conviction, which was published after Plaintiff was sentenced, was made as part of a "judicial proceeding."  County Defendants do not cite — nor can the Court locate — any case with similar facts.  County Defendants summarily argue the "Facebook post is clearly a publication" like the one addressed in *Rader v. Thrasher*, 22 Cal. App. 3d 883, 887 (1972).  (ECF No. 118-1 at 10–11.)  County Defendants make no effort to discuss the facts of *Rader*, much less compare those facts to the instant case.  However, it appears *Rader* is factually distinct from this case, as *Rader* involved multiple statements made during "protracted and complex judicial proceedings" related to a divorce.  22 Cal. App. 3d at 888–89.  In the absence of well-developed arguments to the contrary, the Court finds *Rader* is not persuasive.

Therefore, the Court DENIES County Defendants' motion to dismiss based on § 47(b).

### *iii.  Claim Sixteen*

County Defendants argue Claim Sixteen, which alleges Shapiro illegally searched his cell phone, is barred by issue and claim preclusion.  (ECF No. 118-1 at 11.)  County Defendants also argue Claim Sixteen is an impermissible de facto appeal of issues that have been resolved at the state level.  (*Id.*)  In opposition, Plaintiff argues County Defendants mischaracterize Claim

---

[5]      As with their previous argument, County Defendants again raise new arguments in their reply brief that could have been raised in their motion.  The Court again declines to consider such arguments.

1    Sixteen and fail to meet their burden to show claim or issue preclusion applies.  (ECF No. 122 at

2    11–13.)  In addition, Plaintiff denies there has ever been a state court ruling on the issue of

3    Shapiro's search of Plaintiff's private text messages.  (*Id.*)  Lastly, Plaintiff argues Claim Sixteen

4    is not a de facto appeal, and that County Defendants are improperly conflating the *Rooker-*

5    *Feldman* doctrine with preclusion doctrines.  (*Id.*)

6         County Defendants' arguments for dismissal of Claim Sixteen mirror State Defendants'

7    arguments about preclusion and the *Rooker-Feldman* doctrine, which the Court has already

8    addressed in detail above.  County Defendants' arguments are similarly unavailing.  Like State

9    Defendants, County Defendants fail to address the distinct elements of issue and claim preclusion

10   as applied to Claim Sixteen.  Like State Defendants, County Defendants also fail to cite a case

11   where a court has granted a Rule 12(b)(6) motion under similar circumstances.  Put simply,

12   County Defendants fail to persuade the Court that issue and/or claim preclusion applies as a

13   matter of law, especially considering County Defendants' arguments go far beyond the

14   allegations in the Complaint, are unsupported by evidence, and are disputed by Plaintiff.  Further,

15   although County Defendants do not explicitly cite *Rooker-Feldman*, their second argument

16   appears to invoke the *Rooker-Feldman* doctrine, which the Court has already found does not

17   apply in this case.  County Defendants fail to convince the Court otherwise.

18        Thus, the Court DENIES County Defendants' motion to dismiss Claim Sixteen based on

19   preclusion and the *Rooker-Feldman* doctrine.

20                    *iv.   Bane Act Claims*

21        County Defendants argue the Court should dismiss Claims Sixteen and Eighteen for

22   failure to state a cause of action under the Bane Act.

23                    *a.   Claim Sixteen*

24        County Defendants argue Plaintiff fails to allege Shapiro's search of his cell phone

25   involved any threats, intimidation, or coercion.[6]  (ECF No. 118-1 at 13.)  County Defendants also

26

27   [6]        To the extent County Defendants also intended to argue Plaintiff fails to adequately allege
     a constitutional violation, the Court cannot glean a coherent argument to that effect in County
28   Defendants' motion and therefore declines to address it.  (*See* ECF No. 118-1 at 12–13.)

1   seem to imply that Plaintiff is required to allege violence or a threat of violence.  (*Id.*)  In

2   opposition, Plaintiff argues it is not necessary to plead violence or threat of violence for a Bane

3   Act claim and he adequately alleges the search of his cell phone was inherently intimidating and

4   coercive.  (ECF No. 122 at 14–17.)  County Defendants do not address Plaintiff's arguments on

5   this point in their reply.  (ECF No. 126 at 5.)

6          County Defendants' arguments are underdeveloped and unpersuasive.  As the Court

7   already addressed at length in ruling on City Defendants' motion to dismiss, violence or a threat

8   of violence is not always necessary to state a Bane Act claim, especially in the context of an

9   unlawful search and seizure claim.  In the TAC, Plaintiff alleges Shapiro's warrantless search of

10  his cell phone was "an inherently coercive and intimidating act by law enforcement that

11  demonstrated reckless disregard" of Plaintiff's right to be free from unreasonable searches under

12  Article I, § 13 of the California constitution.  (ECF No. 109 at 21.)  Based on the very limited

13  arguments before the Court, the Court concludes Plaintiff's allegations are sufficient to survive

14  County Defendants' motion to dismiss.  *See Reese*, 888 F.3d at 1043 ("[T]he plain language of [§]

15  52.1 gives no indication that the 'threat, intimidation, or coercion' must be independent from the

16  constitutional violation.").

17         Therefore, the Court DENIES County Defendants' motion to dismiss Claim Sixteen on

18  this basis.

19                           *b.   Claim Eighteen*

20         County Defendants argue there is no evidence they violated Plaintiff's legal rights by

21  posting on Facebook about Plaintiff's criminal case, or that they had specific intent to do so.

22  (ECF No. 118-1 at 13.)  County Defendants further argue the Facebook post did not involve

23  violence or a threat of violence.  (*Id.*)

24         County Defendants' argument is yet again devoid of meaningful analysis.  County

25  Defendants do not develop their argument about there being no "evidence" of a constitutional

26  violation or specific intent, and the Court notes that evidence is generally irrelevant at the

27  pleading stage.  As to County Defendants' arguments about a lack of allegations of violence or a

28  threat of violence, the Court already explained that California courts are undecided on whether

violence or threat of violence is necessary to state a Bane Act claim.  *See Black Lives Matter-Stockton Chapter*, 398 F. Supp. 3d at 680.  Based on the uncertainty amongst California courts and County Defendants' subpar briefing on this issue, the Court declines to address it further at this time.

For these reasons, the Court DENIES County Defendants' motion to dismiss Claim Eighteen.

*v.   Claim for Injunctive Relief*

Lastly, County Defendants argue Plaintiff is not entitled to injunctive relief because he cannot prevail on his claims in connection with the Facebook post.  (ECF No. 118-1 at 14.) Because the Court has denied County Defendants' motion to dismiss claims based on the Facebook post, the Court rejects this derivative argument.

Thus, the Court DENIES County Defendants' motion to dismiss the claim for injunctive relief.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

**IV.    CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

1.    Based on Plaintiff's non-opposition to dismissal of Claim Four, Claim Four is DISMISSED without leave to amend;

2.    State Defendants' Motion to Dismiss (ECF No. 114) is GRANTED with leave to amend as to claims against the State and DENIED in all other respects;

3.    City Defendants' Motion to Dismiss (ECF No. 117) is GRANTED with leave to amend as to Claim Five and DENIED in all other respects;

4.    County Defendants' Motion to Dismiss (ECF No. 118) is DENIED in its entirety.

Plaintiff may file an amended complaint — only to cure the deficiencies addressed herein — not later than thirty (30) days from the date of this Order.  Defendants shall file a responsive pleading not later than twenty-one (21) days from the filing of the amended complaint.  If Plaintiff opts not to file an amended complaint, the case will proceed on the remaining claims in the TAC, and Defendants' responsive pleading will be due not later than twenty-one (21) days from Plaintiff's deadline for filing an amended complaint.

IT IS SO ORDERED.

Date: September 20, 2024

Troy L. Nunley
United States District Judge